*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CV-124

CHARMED, LLC, APPELLANT,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAP-844-19)

(Hon. Yvonne M. Williams, Trial Judge)

(Submitted April 28, 2021                    Decided November 24, 2021)

*Abram J. Pafford* and *Brandi G. Howard* were on the brief for appellant.

*Karl A. Racine*, Attorney General for the District of Columbia, and *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General Office of the Solicitor General were on the brief for appellee.

Before EASTERLY and DEAHL, *Associate Judges*, and NEBEKER, *Senior Judge*.

NEBEKER, *Senior Judge*:    Charmed, LLC ("Charmed") appeals the trial court's order affirming the District of Columbia Department of Health's ("DOH") decision to revoke its eligibility status and deny its application to operate a medical

marijuana dispensary in Ward Seven of the District of Columbia. Appellant asserts that the trial court erred in affirming DOH's decision because DOH violated its due process rights and the agency's decision was unsupported by substantial evidence and based on an erroneous interpretation of law. Specifically, appellant argues that: DOH violated its due process when it interviewed Andy Hai Ting, Charmed's alleged owner without counsel present or a formal record and thereafter relied on the interview in its findings; Charmed was not given a meaningful opportunity to be heard because DOH did not set a clear deadline for when it was required to respond to DOH's allegations before the agency issued a final agency decision; DOH's finding that Charmed violated 22-C D.C.M.R. § 5404.2 (2017)[1] by making false statements was unsupported by substantial evidence; and DOH's finding that Charmed engaged in deception to try and avoid compliance with 22-C D.C.M.R. § 5401.8 (2011) is based on a legally erroneous interpretation of what that regulation prohibits. We affirm.

---

[1] All regulations cited in this Opinion have been amended at least once since DOH's denial of Charmed's application, with the most recent amendments becoming effective March 3, 2021.

## I.  Facts and Proceedings

On February 24, 2017, DOH issued a public notice announcing that it was accepting Letters of Intent to apply for a medical marijuana dispensary registration in Ward 7 and Ward 8, and that such letters would be accepted from March 6, 2017, to April 7, 2017.  On July 2, 2018, DOH informed Charmed by letter that Charmed was being granted the only "deemed eligible" status among the applicants.  This letter stated that "being 'deemed eligible' does not guarantee that an applicant will receive a registration."  In response, on August 6, 2018, the runner-up applicant, D.C. Holistic, filed a petition for review in the Superior Court to challenge DOH's final agency action denying D.C. Holistic's application.[2] Charmed intervened in that lawsuit, and on November 2, 2018, counsel for D.C. Holistic sent a letter ("D.C. Holistic Letter") to DOH claiming that Charmed's application violated 22-C D.C.M.R. § 5401.8 (2011) because Charmed shared ownership with another medical marijuana dispensary in the District of Columbia called National Holistic Healing Center ("NHHC").  Title 22-C D.C.M.R. § 5401.8 (2011) prohibits an applicant of a medical marijuana dispensary from applying for more than one dispensary registration.

---

[2] *DC Holistic Wellness Center, LLC v. District of Columbia Dep't of Health,* 2018 CA 005600 P(MPA) (D.C. Super. Ct. Aug. 6, 2018).

On November 6, 2018, DOH's medical marijuana program manager, Arian Gibson, requested that Mr. Hai Ting come to DOH to answer questions related to Charmed's applicant status. Following this questioning, DOH sought and obtained an order, consented to by the parties, to stay the litigation in the related case involving D.C. Holistic until February 8, 2019, pending an investigation by DOH as to the merits of the allegations included in the D.C. Holistic Letter. On November 13, 2018, DOH informed Charmed by letter that "unless Charmed can disprove the allegations, regardless of the outcome of the pending litigation between D.C. Holistic and [DOH], [DOH] will not be able to issue a dispensary registration to Charmed." After receiving no opposition from Charmed, DOH concluded its investigation on January 9, 2019, finding that Charmed violated the applicable regulations by making false statements in its application. In a letter to Charmed dated January 9, 2019, ("January Letter"), DOH detailed its findings and withdrew Charmed's "deemed eligible" status. Among its findings, DOH found that:

> 1. Andy Hai Ting and Andrew Carter signed sworn affidavits claiming that they were the true and actual owners of Charmed and that their application was complete and accurate.
> 2. The application required the disclosure of all owners of Charmed.

3. Healing LLC owns NHHC, another dispensary operator. The governors of Healing LLC are Chandra Macias and Michael Bobo.

4. Healing LLC provided 100% of the funds, one million dollars, to capitalize Charmed, via a 'loan' without any written agreement or repayment requirement, according to Hai Ting.

5. The Healing LLC 'loan' was provided by its Managing Member, Chandra Macias, who is also CEO of Charmed, Chairman of the Charmed Board of Directors, and the CEO and owner of NHHC.

6. Charmed has no independent bank account. Both Macias and Bobo ... share a TD Bank account from which they finance the operations of Charmed and NHHC.

7. Charmed's lease was signed by Hai Ting for both Charmed and as a 'General Partner' of Healing LLC.

8. All employment applications for Charmed crossed-over with applications for NHHC or were from current NHHC employees.

9. Charmed's organization chart shows that as Director of Quality Assurance, Mr. Andrew Carter reports to Mr. Hai Ting who reports to Macias.

10. Charmed's five-year budget did not incorporate the repayment of the Healing LLC's 'loan' for $1 million.

11. The affidavits executed by Mr. Hai Ting and Mr. Carter notified the affiants that 'the making of a false statement, whether made with or without the knowledge of consent of the applicant, shall in the discretion of the Director, constitute sufficient cause for denial of the application.'

Reviewing these findings in totality, DOH found "good cause" to deny Charmed's application pursuant to 22-C D.C.M.R. §§ 6000.2 (2011) and 5404.2 (2017). Specifically, DOH concluded that "it is not reasonable or plausible that

Chanda Macias and Michael Bobo gave or loaned one million dollars to a competitor without a written agreement or verbal understanding that provided for Ms. Macias or Mr. Bobo to share in the profits of the dispensary, or at a minimum to receive repayment of the loan." DOH further concluded that Mr. Hai Ting and Mr. Carter acted as "strawmen" allowing Ms. Macias and Mr. Bobo to conceal their ownership interests in the dispensary and to circumvent the prohibition set forth in to 22-C D.C.M.R. § 5401.8 (2011). Based on its findings, DOH reasoned that Mr. Hai Ting and Mr. Carter falsely attested that they were the true and actual owners of the business, and that their applications were complete and accurate.

On February 7, 2019, Charmed filed a petition for review of an agency decision in Superior Court pursuant to Agency Rule 1. On January 2, 2020, after the parties were given the opportunity to fully brief the case,[3] the trial court affirmed DOH's determination.

The trial court first rejected Charmed's two procedural challenges. Charmed asserted that its due process rights were violated when DOH interviewed Mr. Hai

---

[3] D.C. Holistic was granted leave to intervene in March 2019 and in August 2019 filed an opposition to Charmed's petition that largely adopted and incorporated DOH's opposition.

Ting without counsel or a formal record and thereafter relied on the interview in some of its findings.

Charmed also claimed that it was denied a meaningful opportunity to respond prior to DOH's January 9, 2019 decision. In rejecting that claim, the court found that on at least three occasions Charmed had received notice of DOH's investigation of the claims set forth in D.C. Holistic's letter—"(1) when Mr. Hai Ting was interviewed on November 6, 2018, (2) when Charmed consented to a stay of D.C. Holistic's pending action so that the allegations could be investigated, and (3) when DOH addressed the allegations in a letter to Charmed on November 13, 2018." Further, the court found that Charmed had an opportunity to respond to the allegations both on November 6 when Mr. Hai Ting was interviewed and subsequent to DOH's November 13, 2018 letter, "which specifically stated that 'unless Charmed can disprove the allegations, regardless of the outcome of the pending litigation between D.C. Holistic and [DOH], [DOH] will not be able to issue a dispensary registration to Charmed.'" The trial court also found "that the fifty-seven days between November 13, 2018[,] and the issuance of the final agency decision on January 9, 2019, was reasonable in light of the circumstances and the prior notice provided to Charmed."

The court also rejected Charmed's two substantive challenges: that there was insufficient support "for DOH's conclusion that Charmed's owners made false statements"; and that DOH unreasonably interpreted its own regulations. The trial court determined that substantial evidence supported DOH's January 9, 2019, conclusion that "Ms. Macias and Mr. Bobo retained an ownership interest in Charmed," and that Charmed had "failed to completely and accurately disclose this interest in its application." In addition, the court found that Charmed's argument that there was no evidence that false statements were intentionally made was irrelevant because 22-C D.C.M.R. § 5404.2 (2017) "explicitly states that the denial of an application may be made regardless of whether the applicant had knowledge of or consented to the false statements."

Charmed also asserted that 22-C D.C.M.R. § 5401.8 (2011), the regulation prohibiting applicants from applying for more than one dispensary registration, was inapplicable and thus could not provide support for DOH's decision. Charmed argued the regulation was inapplicable because a business applicant is defined as "a person who has made an application to register a cultivation center, dispensary, or medical marijuana certification provider permit and who has an application

pending before [DOH]" and NHHC did not have a pending application.[4] The trial court found that DOH reasonably interpreted 22-C D.C.M.R. § 5401.8 (2011) to prohibit Ms. Macias and Mr. Bobo from applying for more than one dispensary registration stating "DOH's interpretation of 22-C D.C.M.R. § 5401.8 as a regulation preventing multiple ownership is reasonable—particularly because of the statutory limitation on medical [marijuana] dispensaries in the District."[5]

Appellant's timely notice of appeal followed.

## II.    The Law

This Court decides administrative agency appeals from the Superior Court "as if the appeal arose directly from the administrative agency." *Smith v. District*

---

[4]    The language of the relevant regulation, 22-C D.C.M.R. § 9900, was amended on March 3, 2021, to replace references to DOH with references to the "Board." This is a reflection of the legislature's decision to transition the District's Medical Marijuana Program from the Department of Health to the Alcoholic Beverage Control Board.

[5]    On March 3, 2021, Title 22-C D.C.M.R. § 5401.8 was amended to read: "An applicant may apply for or hold more than [] cultivation center registration, but may apply for or hold only one [] dispensary registration or testing laboratory registration."

*of Columbia Off. of Hum. Rts*., 77 A.3d 980, 990 (D.C. 2013) (quoting *Kennedy v. District of Columbia*, 654 A.2d 847, 853 (D.C. 1994)).  This court reviews the agency's decision "to determine whether there is substantial evidence to support the agency's findings of fact and whether the agency's action was 'arbitrary, capricious, or an abuse of discretion.'"  *District of Columbia Off. of Hum. Rts. v. District of Columbia Dep't of Corr*., 40 A.3d 917, 923 (D.C. 2012) (quoting *Bagenstose v. District of Columbia Off. of Emp. Appeals*, 888 A.2d 1155, 1157 (D.C. 2005)).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Smallwood v. District of Columbia Metro. Police Dep't*, 956 A.2d 705, 707 (D.C. 2008) (internal quotations omitted).  Evidence is not substantial if it is so highly questionable in the light of common experience and knowledge that it is unworthy of belief.  *See Metro. Police Dep't v. Baker*, 564 A.2d 1155, 1159-69 (D.C. 1989).

The Court reviews legal issues de novo but will "defer to the agency's interpretation of the statute and regulations it is charged by the legislature to administer, unless its interpretation is unreasonable or is inconsistent with the statutory language or purpose."  *DeVita v. District of Columbia*, 74 A.3d 714, 719 (D.C. 2013) (internal quotation omitted); *see also Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs*., 683 A.2d 470, 472 (D.C.

1996). "When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order." *1330 Conn. Ave. Inc. v. District of Columbia Zoning Comm'n*, 669 A.2d 708, 714-15 (D.C. 1995) (internal quotation omitted).

## III. Analysis

Appellant's arguments on appeal largely mirror those it made below. We will address first its procedural challenges, then its substantive challenges.

## A. Procedural Challenges

We reject appellant's contention that it was not given a meaningful opportunity to be heard. Procedural due process requires notice and an opportunity to be heard. *See Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1086 (D.C. 2007); *see also Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). As the trial court found, correctly, Charmed was provided notice of DOH's investigation on at least three different occasions: (1) when Mr. Hai Ting was interviewed on November 6, 2018; (2) when Charmed consented to a stay of D.C. Holistic's lawsuit so that the allegations against it could be investigated; and

(3) when DOH issued a letter on November 13, 2018, to Charmed, which laid out the allegations against it and informing it that "unless Charmed can disprove the allegations, regardless of the outcome of the pending litigation between D.C. Holistic and [DOH], [DOH] will not be able to issue a dispensary registration to Charmed." Both Mr. Hai Ting's interview on November 6, 2018, and the November 13, 2018 letter provided Charmed an opportunity to respond to the allegations and it failed to do so. [6]

We cannot conclude that the fifty-seven day time-period Charmed was given to respond to DOH's allegations was so unreasonable as to constitute a due process violation.[7]

---

[6] In its brief, appellant reasserts an argument that it made before the trial court that DOH's January 9, 2019 decision was a violation of procedural due process because its November 13, 2018 letter never gave a deadline for Charmed to respond to the allegations and Charmed's counsel sent an email to DOH on December 7, 2018, in which she stated, "[w]e plan to reach out to the Department of Health shortly; I'll be sure to keep you updated about those communications." Appellant's argument does not persuade. Here the sequence of events indicates that appellant had notice, knew a timely response was needed as evidenced by counsel's email, and was given an adequate opportunity (57 days) to respond. Even absent a deadline, we discern no due process violation on these facts.

[7] Appellant makes the argument that DOH's use of Mr. Hai Ting's testimony to support its findings violates 22-C D.C.M.R. § 6001.5 (2017). Because this argument was not raised below, we decline to address it. *See Thornton v. Norwest Bank of Minnesota*, 860 A.2d 838, 842 (D.C. 2004) ("It is

(continued…)

**B. Substantive Challenges**

DOH withdrew Charmed's deemed eligible status and denied its application based on its conclusion that Charmed made false statements on its application. Specifically, DOH found that Mr. Hai Ting and Mr. Carter "falsely attested on their affidavits to being the true and actual owners of the business for which the registration is sought, and falsely attesting that the application was complete and accurate." The authority upon which DOH relied when making this decision was 22-C D.C.M.R. §§ 6000.2 (2011) and 5404.2 (2017). Title 22-C D.C.M.R. § 6000.2 (2011) stated, in pertinent part, that "[t]he Director may deny an application for good cause. For the purposes of this section, 'good cause' shall include . . . a finding by [DOH] that either: (a) The applicant does not meet the requirements or

---

(…continued)

fundamental that arguments not raised in the trial court are not usually considered on appeal . . . . This court will deviate[] from this principle only in exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record. The record before us gives us no reason to make such a deviation.") (internal quotations omitted). Similarly, because Charmed has consistently failed to offer sufficient legal support for its inference that the absence of Charmed's counsel or a formal recording during the November 6, 2018, interview amounted to a due process violation, we will not address this claim. *See Drake v. McNair*, 993 A.2d 607 (D.C. 2010) (deeming an issue waived where party failed to include in her brief any substantive argument related to the issue).

has failed to comply with any of the provisions of the Act or this subtitle." Title 22-C D.C.M.R. 5404.2 (2017) reads:

> The applicant shall sign a notarized statement certifying that the application is complete and accurate. Any person who knowingly makes a false statement on an application, or in any accompanying statement under oath that the Department may require, shall be guilty of the offense of making false statements. *The making of a false statement, whether made with or without the knowledge or consent of the applicant, shall, in the discretion of the Director, constitute sufficient cause for denial of the application or revocation of the registration.* The making of false statements shall also constitute the basis for a criminal offense under D.C. Official Code § 22-2405 (2001) (emphasis added).

Appellant dedicates a significant portion of its brief to combating the proposition that it acted with "wrongful intent" when omitting the names of Ms. Macias and Mr. Bobo as owners of Charmed in its application to DOH, repeatedly asserting it acted in "good faith" and did not knowingly make false statements in its application. Because we agree with the trial court that "22-C D.C.M.R. § 5404.2 (2017) explicitly states that the denial of an application may be made regardless of whether the applicant had knowledge of or consented to the false statements," the only remaining question is whether DOH's decision was supported by substantial evidence. *See Smallwood*, 956 A.2d at 707. We conclude that it was.

The DOH made twenty-four findings of fact that formed the basis of the agency's decision to conclude that Mr. Hai Ting and Mr. Carter made false statements when they attested to being the only true and actual owners of Charmed. It is easy for us to conclude that there was substantial evidence to support DOH's finding, particularly in light of Charmed and NHHC's joint bank account, the companies' shared employees, the companies' leadership structure, and NHHC's funding of Charmed's operations. *See Berkley v. District of Columbia Transit, Inc.*, 950 A.2d 749, 759 (D.C. 2008) ("Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). Despite Charmed's assertion that this "approach . . . ignores the findings and reasons DOH actually used as grounds for withdrawing Charmed's 'deemed eligible' status," it is appellant who appears to be engaging in a "shell game" in an attempt to rewrite the reasons that DOH gave for its decision.

Appellant latches on to the statement in DOH's January Letter that it found "that the purpose of concealing the ownership interests of Chanda Macias and Michael Bobo was to circumvent the prohibition set forth in 22-C D.C.M.R. § 5401.8," to argue that "DOH cannot abandon the reasons and rationale it actually

used to justify its final agency action, and attempt to substitute new ones on appeal." However, the January Letter quotes the applicable provisions of 22-C D.C.M.R. §§ 6000.2 (2011) and 5404.2 (2017), then explicitly states "[DOH] has withdrawn the 'deemed eligible' status of Charmed and denied Charmed's application for a dispensary registration pursuant to Title 22-C D.C.M.R. §§ 6000.2 and 5404.2." Thus, while DOH may have believed that Charmed was trying to conceal its owners in order to circumvent 22-C D.C.M.R. § 5401.8 (2011), that regulation was not the gravamen for the agency's decision denying the application. The application's false statements regarding Charmed's true owners, regardless of the purpose behind those statements, was at the core of DOH's decision. *See Black v. District of Columbia Dep't of Hum. Servs.*, 188 A.3d 840, 850 (D.C. 2018) ("Generally, an administrative agency's decision can be sustained on review only on the grounds on which the agency actually relied.") (internal quotation omitted). Because DOH's decision was based on a finding that Charmed made a false statement in its application, rather than a violation (or attempted violation) of 22-C D.C.M.R. § 5401.8 (2011), it matters not why DOH thought Charmed made a false statement — only that it had substantial evidence to conclude that a false statement was made.[8]

---

[8] Because we conclude that DOH's decision to deny Charmed's application

(continued…)

For similar reasons, we reject appellant's argument that, because it was able to provide some evidence to support the conclusion that Ms. Macias and Mr. Bobo were not owners of Charmed, DOH's conclusion that they were and thus Charmed made a false statement was not supported by substantial evidence. First, as discussed above, Charmed did not offer any evidence to rebut the allegations against it until after the DOH's final agency decision. *See Watergate E. Comm. Against Hotel Conversion to Co-op Apartments v. District of Columbia Zoning Comm'n*, 953 A.2d 1036, 1044 (D.C. 2008) (an argument not raised before the agency is normally waived on appeal). Second, the crucial question is not, in fact, if Ms. Macias and Mr. Bobo are indeed owners of Charmed, but if DOH had

---

 (…continued)

under 22-C D.C.M.R. § 5404.2 (2017) was supported by substantial evidence, we need not reach the question of whether its interpretation of 22-C D.C.M.R. § 5401.8 (2011) is erroneous. *See Baldwin v. District of Columbia Off. of Emp. Appeals*, 226 A.3d 1140, 1144 (D.C. 2020) (affirming based on the Board's alternative ruling); *Fogo De Chao (Holdings) Inc. v. United States Dep't of Homeland Sec.*, 769 F.3d 1127, 1149 (D.C. Cir. 2014) (where "an agency has set out multiple independent grounds for a decision, we will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable." (internal quotation omitted)); But see supra note five and accompanying text (amending the regulation to make clear that an applicant may only hold one dispensary registration).

substantial evidence to so find. *See Scott v. Police & Fireman's Ret. & Relief Bd.*, 447 A.2d 447 (D.C. 1982) (if there is substantial evidence to support the agency's decision, then the court must affirm the decision even if there is substantial evidence to support a contrary conclusion).

When confronted by the evidence that DOH relied upon to make such a finding, appellant's primary argument is that DOH could not have reasonably believed that Ms. Macias and Mr. Bobo were owners despite Charmed's representation that they were not because such a falsity would have been too obvious given that "[a]t every turn, Charmed proudly highlighted and explicitly emphasized its affiliation with NHHC," and through it Ms. Macias and Mr. Bobo. But the fact that a false statement may be obvious does not make it any less false, and, as already explained, 22-C D.C.M.R. §§ 6000.2 (2011) and 5404.2 (2017), allowed DOH to deny Charmed's application upon a finding that a false statement was made regardless of intention.

\*\*\*\*\*

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*